IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHERRY SHULL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 18-00084-CV-W-ODS ) |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Pending is Defendant's motion to dismiss. Doc. #2. For the reasons below, the Court grants in part and denies in part Defendant's motion.

## I. BACKGROUND

On July 25, 2016, Plaintiff was driving her vehicle when she was struck by a vehicle operated by third-party Joshua Sowell.[1] As a result of the collision, Plaintiff suffered injuries. Sowell carried an insurance policy, but the coverage was insufficient to compensate Plaintiff for her injuries.

At the time of the accident, two automobile insurance policies issued to Plaintiff by Defendant were in force. First, Policy No. 2054-7815-01-69-FPPA-MO provided coverage for a 1999 Chevrolet Blazer ("Blazer policy"). Second, Policy No. 2054-7815-02-72-FPPA-MO provided coverage for a 2001 Saturn SL1 ("Saturn policy"). The Blazer policy's declarations page provided underinsured motorist coverage with a limit of "$50,000 each person," and "$100,000 each accident." The Saturn policy provided underinsured motorist coverage with a limit of "$100,000 each person," and "$300,000 each accident."

Although the policies provided different underinsured motorist coverage limit amounts, the contractual language of the policies' underinsured motorist coverage

---

[1] All facts are taken from Plaintiff's Petition and the automobile insurance contracts embraced by Plaintiff's Petition. Doc. #1-1.

sections are identical. The insuring agreement of each policy's underinsured motorist coverage section states:

> B. INSURING AGREEMENT
>    1. Subject to the provisions contained within each section of this endorsement, we will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The amount of compensatory damages we will pay will never exceed the underinsured motorist coverage limits of liability shown on the Declarations minus any payment or reduction set forth in Section D.3 Limits of Liability.

Doc. #1-1, at 31, 53 (emphasis in original). In relevant part, the exclusions of each policy's underinsured motorist coverage section states:

> C. EXCLUSIONS
>    1. **We** do not provide coverage for **bodily injury** sustained by any **insured person**:
>       a. while **occupying**, or when struck by, a motor vehicle which is owned by or furnished or available for regular use by **you** or any resident of **your** household that is not insured for this coverage under this policy.

Doc. #1-1, at 31, 53 (emphasis in original).[2] The limits of liability section of each policy's underinsured motorist coverage section states:

> D. LIMITS OF LIABILITY
>    1. The limits of liability for this coverage as shown in the Declarations apply, subject to the following:
>       a. the **bodily injury** liability limit for "each person" is the maximum for all damages sustained by any person as a result of **bodily injury** to that person in any one accident, including but not limited to damages for care, loss of consortium, loss of services or death.
>       b. subject to the **bodily injury** liability limits for "each person," the **bodily injury** liability limits for "each accident" is the maximum for **bodily injury** sustained by two or more persons in any one accident.
>
>    2. The limits of liability for this coverage minus any reductions or offsets set forth in this endorsement are the most that we will pay regardless of the number of:
>       a. **insured persons**;

---

[2] The parties refer to this as the "owned vehicle" exclusion.

b. claims made;
   c. claimants;
   d. vehicles or premiums shown in the Declarations;
   e. vehicles involved in the accident; or
   f. policies issued to **you** or a **relative** by us or any other member company of the **American Family Insurance Group of companies**.

   The limits of liability shown in the Declarations may not be added, combined or stacked with the limits shown in the Declarations for any other policy to determine the maximum limits available for each person or for each occurrence. THIS MEANS THAT NO STACKING, COMBINATION OR AGGREGATION OF UNDERINSURED MOTORIST COVERAGES IS ALLOWED UNDER THIS POLICY.

   3. The limits of liability of this coverage will be reduced by:
      a. all payments made by or on behalf of the owner or operator of the **underinsured motor vehicle** or organization which may be legally liable.
      b. all payments made under the liability coverage of this policy.
      c. all payments made or amount payable because of the **bodily injury** under any worker's compensation law, disability benefits law, the pension code, or any similar law, or any private disability insurance or benefits.

   4. No **insured person** will be entitled to receive duplicate payments for the same elements of loss. Any amount we pay under this coverage to or for an **insured person** will be reduced by any payment made to that person under any other coverage of this policy.

Doc. #1-1, at 32, 54 (emphasis in original). In relevant part, the other insurance section of each policy's underinsured motorist coverage states:

   E. OTHER INSURANCE
   The other insurance language is subject to the anti-stacking provisions in Section D.2 LIMITS OF LIABILITY.

   1. Other Policies Issued by Us
   For the same motor vehicle accident, if there is underinsured motorist coverage under more than one policy issued to **you** or a **relative** by us or any member company of the **American Family Insurance Group of companies**, only the policy with the highest underinsured motorist coverage limits of liability will provide underinsured motorist coverage subject to the reductions provided

3

> for in the "Limits of Liability" section. If two or more such policies have the same highest underinsured motorist coverage limits of liability, then only one such policy chosen by **us** will provide underinsured motorist coverage subject to the reductions provided for in the "Limits of Liability" section.

Doc. #1-1, at 32, 54 (emphasis in original).

On January 10, 2018, Plaintiff filed her Petition in the Circuit Court for Jackson County, Missouri, alleging Defendant was unlawfully withholding payment due to her after her collision with underinsured motorist Joshua Sowell. Doc. #1-1, at 1-11. On January 31, 2018, Defendant removed this matter on the basis of diversity jurisdiction. Doc. #1. Contemporaneously, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiff failed to state a cause of action upon which relief could be granted. Doc. #2. Plaintiff opposed the motion (Doc. #10), but Defendant did not file a reply, and the time for doing so has passed. Accordingly, the motion is ripe for the Court's consideration.

## II. STANDARD

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### III. DISCUSSION

Interpretation of an insurance policy is a question of law. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999) (citation omitted). In Missouri, the general rules of contract construction apply to insurance contracts. *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1132 (8th Cir. 2014) (citation omitted). "The provisions of an insurance policy are read in context of the policy as a whole," and "[t]he language in a policy is given its ordinary meaning unless another meaning is plainly intended." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc. 1998) (citations omitted). The key is whether the language is ambiguous or unambiguous. *Daughhetee*, 743 F.3d at 1132-33 (citation omitted). If the language is unambiguous, the Court must interpret the policy as written, but if the language is ambiguous, the Court must interpret the policy in favor of the insured. *Id.* at 1133 (citations omitted). "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the policy [and] is reasonably open to different constructions." *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.3d 810, 814 (Mo. banc 1997). The presence of a broad provision for coverage coupled with subsequent narrowing language does not create an ambiguity. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 162-63 (Mo. banc 2007).

Although Plaintiff's Petition alleges claims for breach of contract and vexatious refusal, it appears Plaintiff sets forth two theories of recovery. First, Plaintiff argues she is entitled to "stack" the underinsured motorist limits of both the Blazer policy and the Saturn policy. "Stacking" refers to "an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Lee v. State Farm Mut. Auto.*, Case No. 10-5083-CV-SW-RED, 2011 WL 5983370, at *1 (W.D. Mo. Nov. 30, 2011) (quoting *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 539 (Mo. Ct. App. 2010)); *see also Niswonger v. Farm Bureau Town & Country Ins. Co.*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999) (citation omitted).

Underinsured motorist coverage is "intended to provide insurance coverage for insureds who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to fully pay for the injured person's actual damages." *Long v. Shelter Ins. Cos.*, 351 S.W.3d 692, 696 (Mo. Ct. App. 2011) (internal quotation omitted). Uninsured motorist coverage is not required in Missouri. *Id.* "Consequently, the existence of the [underinsured motorist] coverage and its ability to be stacked are determined by the contract entered between the insured and insurer." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009) (internal quotation and citation omitted). If the insurance policy language is unambiguous in disallowing stacking, the anti-stacking provision will be enforceable. *Id.* (citation omitted); *see also Kennedy v. Safeco Ins. Co. of Ill.*, 413 S.W.3d 14, 16-18 (Mo. Ct. App. 2013) (enforcing the anti-stacking provision). If the insurance policy language is ambiguous as to stacking, "it must be construed against the insurer" and "stacking will be allowed." *Ritchie*, 307 S.W.3d at 135 (internal quotation and citation omitted); *see also Niswonger*, 992 S.W.2d at 316-19.

The Missouri Court of Appeals recently found a policy identical to the one at issue in this matter unambiguously prohibited stacking of policies. *Marrs v. Am. Family Mut. Ins. Co.*, 522 S.W.3d 926, 930-32 (Mo. Ct. App. 2017). Based on its reading of the policies, and the analysis set forth in *Marrs*, the Court finds the Blazer and Saturn policies unambiguously prohibit stacking. Plaintiff concedes this point as well. Doc.

#10, at 1 ("Plaintiff does concede after review of Defendant's Motion and for purposes of this motion that the two separate policies should not be stacked and that the 'off-set' provision may apply in this case."). Accordingly, the Court grants Defendant's motion to dismiss to the extent Defendant argues Plaintiff may not stack her underinsured motorist coverages because this claim fails as a matter of law.

Plaintiff's second theory of recovery is based on the ambiguity found between the exclusion section and the other insurance section of the Saturn policy. Plaintiff's alternative argument that the other insurance section operates to provide the Saturn policy's higher limit of underinsured motorist coverage states a claim upon which relief may be granted. Accordingly, the Court denies Defendant's motion to the extent it argues the Saturn policy is inapplicable as alleged.

## IV. CONCLUSION

Consistent with the above opinion, Defendant's motion to dismiss is granted in part and denied in part.

IT IS SO ORDERED.

DATE: March 5, 2018

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT